## In re WESTERFIELD et al.

(Supreme Court, Appellate Division, Second Department. May 31, 1901.)

1. APPEAL AND ERROR—EFFECT OF DECISION.

　　Where, on review of an order of the surrogate refusing to open a decree of accounting by a trustee under a will, the appellate division of the supreme court determined that certain funds had been misappropriated by a co-trustee, for which appellant was not liable, and so modified the decree of the surrogate, and affirmed it as modified, such decree as amended became the decree of the appellate division, and binding on the surrogate in subsequent proceedings.

2. SAME.

　　On appeal from a decree of the surrogate, the appellate division of the supreme court modified such decision so as to hold that the appellant trustee was not liable for a devastavit of his co-trustee. Thereafter respondents applied to the appellate division for an order reopening its decree so as to permit evidence to be taken as to such liability of appellant, which application was denied. Respondents then, on the same proofs, applied to the surrogate to open such decree and take such evidence, which application was granted; and, before the appeal from such order was heard, the evidence was taken, and had been considered by the appellate division on an appeal from a decree of the surrogate entered on such evidence. *Held*, that the surrogate had no authority to open the decree of the appellate division, especially after that court had refused to do so, and such order had no effect on the finality of the decree of the appellate division as it existed when the order was made.

3. SAME—AMENDING DECREE.

　　On appeal from a decree of the surrogate determining the amount of property in the custody of two trustees, and that a certain amount thereof was in the custody of appellant's co-trustee, the decree was so modified as to one item as to hold appellant liable therefor. Appellant's motion to modify such decision so as to permit him to show that his co-trustee had misappropriated the other items was denied, for the reason that the court did not consider that such decree, as modified, concluded him on the question. Afterwards it was claimed that he was bound by such decree, and his motion to so modify such decision was renewed. *Held*, that the decision should be amended so as to permit appellant to give proof in exoneration of his liability for misappropriation by his co-trustee.

4. SAME—DECREE IN APPELLATE COURT—WHEN ENTERED.

　　On appeal from a decree of the surrogate on the accounting of trustees, the appellate division determined that appellant was not liable for certain sums misappropriated by his co-trustee, and that as to certain other items further evidence was necessary to determine his liability. The decree was reversed and remanded for disposition in accordance with the rules laid down in the opinion. Thereafter the surrogate took evidence, not on the questionable items, but on those the supreme court held that appellant was not liable. Respondents also brought an action in equity to charge appellant with liability for such misappropriation of his co-trustee, and secured judgment. Appellant moved that the appellate division direct and enter a decree in accordance with the terms of the prior decision. *Held*, under Code Civ. Proc. § 2586, providing that, where an appeal is taken on the facts, the appellate court has the same power to

decide the questions of fact as the surrogate had, and may, in its discretion, receive further evidence and appoint a referee, the appellate division has full power to enter such decree, but though ·by the proceedings of the surrogate there has been an evident attempt to evade the decision of the appellate court, in view of the possible misconception of the former decision as to the questions which were remitted, the motion should be denied.

Appeal from order of surrogate, Westchester county.

In the matter of the application of Mary J. Westerfield and Flora E. Rogers for an accounting of trustees under the will of Jason Rogers, deceased. Appeal from an order opening a decree and authorizing the petitioners to take further proof upon the merits. Reversed. Also a motion to resettle a former order of this court, made and entered herein on the 11th day of July, 1898. 53 N. Y. Supp. 25. Granted. Also a motion asking that this court enter a final decree herein based upon its decision entered on the 27th day of March, 1900. Denied.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCH-BERG, JENKS, and SEWELL, JJ.

Edward Winslow Paige, for appellant and for the motions.
William G. Wilson, for respondents.

GOODRICH, P. J. The matters disclosed by the papers upon this appeal and in the respective motions call for an examination of the prior proceedings in the matter to which these applications refer; and, while it is not necessary to restate all the details, it is proper to call attention to the several decisions and orders which have been made by this court, in order that the present applications, and our disposition of them, may be fairly understood. The matter as it has appeared in this court will be found reported in Re Westerfield, 32 App. Div. 324, 53 N. Y. Supp. 25; 40 App. Div. 610, 57 N. Y. Supp. 1150; 48 App. Div. 542, 63 N. Y. Supp. 10; and, in the court of appeals, 163 N. Y. 209, 57 N. E. 403.

The first proceeding which brought the matter before this court was an appeal from an order refusing to open a decree of accounting, charging the defendant Thomas Rogers with liability as trustee under the last will of Jason Rogers, deceased. Upon such appeal we held that, as the record disclosed that Thomas Rogers accounted for the sum of $20,000 as being on hand at the time the decree was entered, he was by its terms chargeable with, and bound to account for, such sum, but that as he claimed that such sum had never come to his hands, but remained in the custody and control of his cotrustee, Cauldwell, the decree might be opened so far as to permit him, if he could, to show any facts in connection therewith which might relieve him from responsibility therefor, and that as it appeared that Cauldwell had the sole custody and control of the moneys and property of the estate at the time the decree was entered, and thereafter misappropriated it, such decree constituted no bar preventing Thomas Rogers from showing such facts in exoneration of liability therefor. As it appeared that Cauldwell had misappropriated property and moneys of the estate to a sum upward of $130,-

000 after the entry of the decree, and prior to December 8, 1895, we held, as matter of law, that Thomas Rogers was not liable therefor, and reversed the decree of the surrogate which charged him with such liability, holding that Thomas Rogers became liable for the devastavit of this estate only after the 8th day of December, 1895, when the disclosure of such devastavit was made to him by his co-trustee. And in this respect the court modified the decree, and affirmed it as so modified. This, then, became a decree of this court, binding upon the surrogate and all the world, so long as it stood unreversed. Up to this time it has not been reversed by any court of competent authority. In that proceeding there was also an appeal from a decree of the surrogate removing Cauldwell and Rogers as trustees of this estate. That decree this court affirmed. On the 12th day of May, 1898, the surrogate made and entered a decree, based upon the decree of March 16, 1897, adjudging Thomas Rogers to be guilty of a willful contempt in failing to comply with the provisions of the last-mentioned decree, and directing that he pay a fine of $60,000, and in default that he be confined in the county jail of Westchester county until such fine should be paid. This decree we reversed, holding that, as it did not appear that the property which Rogers had induced Cauldwell to transfer to the estate was insufficient to pay the amount of the devastavit committed by Cauldwell, the proceedings to punish as for a contempt should be held in abeyance until such property could be sold, and the sum determined for which Thomas Rogers was liable, and that until such event happened there existed no sufficient basis for committing him for contempt, as the proceeds of the property might discharge all the obligation of Thomas Rogers to this estate. And in this connection we also considered the fact that Cauldwell, the co-trustee who had stolen the property, was in no wise committed for contempt or otherwise punished, although by his acts alone the devastavit had been produced. There was also an appeal from an order made by the surrogate denying a motion made by Thomas Rogers to open a decree settling the accounts of Rogers and Cauldwell as trustees under the will, which decree embraced the proceedings of the trustees up to September 1, 1893, on which motion Rogers asked that it be declared in the decree that the moneys and property therein described were in the sole possession of Cauldwell, and that the latter, and not Thomas Rogers, be decreed to pay over such moneys and property. This order we reversed so far as it assumed to charge any liability upon Thomas Rogers prior to the 8th day of December, 1895. The next step in this proceeding was a motion made by the petitioners for an order of this court opening its order or decree made herein as above recited, so as to permit such proof to be taken as might be necessary to bring before the court all available evidence upon the question found to be material by the decision of this court, and also as might be necessary to a due consideration of all the questions then pending before this court. This application was based upon the affidavits of the petitioners and the affidavits of their attorneys. After a due consideration of such application, the same was denied; the reasons therefor being stated in 48 App. Div. 543,

63 N. Y. Supp. 10. Immediately following this application the petitioners applied upon the same proofs to the surrogate of Westchester county to open such decree and take further evidence upon
the subject of Thomas Rogers' liability for the devastavit of Cauldwell. This application resulted in the surrogate's making an order
opening said decree and authorizing proof to be taken upon such
subject, and by this appeal that order is brought into this court at
this time. The surrogate thereupon took proof upon the general
subject of Thomas Rogers' liability for Cauldwell's devastavit. At
the time the motion was made by the petitioners to open the decree
in this court, Thomas Rogers made an application to have the order
which opened the decree of March 16, 1897, resettled, so as to permit him not only to give proof in exoneration of his liability for
the $20,000, but also for any other moneys or property misappropriated by Cauldwell. This motion the court denied, for the reason
that he was not barred by said decree from showing that the property and moneys were misappropriated after the entry of the decree.
These reasons have been already fully and sufficiently stated. The
surrogate, after taking proof upon the entire subject, rendered a
decree charging Thomas Rogers with the whole of Cauldwell's devastavit, without regard to the determination and decree as directed
by this court upon the prior appeal. Upon appeal from such decree,
the same was reversed so far as it charged Thomas Rogers with
the devastavit committed by Cauldwell prior to the 8th day of December, 1895. In addition thereto we struck from such decree an
item of $5,000, there being no sufficient evidence to sustain a finding
charging Thomas Rogers therefor. We also struck from the decree
that part which charged Thomas Rogers with the whole of the sum
advanced to carry the Empire Hotel property after the new trustee
was appointed, holding that Thomas Rogers could be charged only
with a proportionate part of such sum as to the adult cestuis que
trustent. We also modified the decree as to the rate of interest
which should be charged against Thomas. It was claimed by him
that he should be credited with one-third of the sum which had
been paid on account of the Cauldwell property, for the reason that
such sums were taken from the corpus of the estate, a third of which
belonged to him, and unless credited therewith he would be subjected to a double charge as to such amount. Upon the record then
before us we were unable to determine whether Thomas Rogers had
been so charged or not, and we remitted such question to the surrogate for disposition. In all other respects we affirmed the decree
as thus modified. Therefore the only question which was left for
the surrogate to determine, so far as Thomas was concerned, was
simply whether he had been charged twice for one-third of such
amount. Our reasons for the conclusions are stated in 48 App. Div.
542, 63 N. Y. Supp. 10. Application was then made for leave to
appeal to the court of appeals, which was granted by this court,
and certain questions were certified. That court held that the
answers to such questions depended upon the facts established by
the evidence, and, as this depended upon different inferences, the
court of appeals was not authorized, under the constitution, to

answer the same, and therefore dismissed the appeal. In the opinion the court stated, in interpretation of the judgment of this court:

"It did not attempt to modify the judgment or to strike from the decree the items in controversy. As we understand it, the court intended to order a further hearing with reference to those items. It may be that the parties can submit further evidence bearing upon these items, and, if they can, we think it should be permitted." 163 N. Y. 209, 213, 57 N. E. 403, 404.

So far as this court had determined that Thomas Rogers could not be charged with the devastavit of Cauldwell, the decree as entered by this court was intended to be final, and twice final, as that question was settled on the first appeal to which we have called attention. It was equally final upon the last appeal, after a consideration of the additional testimony taken by the surrogate. It was the intention of this court to make it final as to every question involved, except that which related to the amount, if any, of Thomas Rogers' interest in the principal sum applied upon the Cauldwell property. The first motion before us asks this court now to make up and direct a judgment upon the proof and proceedings as the same appeared when such decision was made. The second motion is for a resettlement of the order opening the decree of March 16, 1897, so as to permit Thomas Rogers to give proof in exoneration of any liability thereunder for Cauldwell's devastavit.

We shall, in our discussion, consider the present matters in the order in which they are stated. The first involves the power of the surrogate to make the order opening the decree and permitting further testimony to be taken after such order has been denied by this court. It is certainly a novel proposition, to say the least, that a final decree of an appellate tribunal can be vacated and set aside by the court from which the appeal is taken. That this decree is a final decree is settled by the court of appeals. In re Prentice, 160 N. Y. 568, 55 N. E. 275; In re Tilden's Ex'rs, 98 N. Y. 434. And this court so treated it upon the first appeal. 32 App. Div. 324, 53 N. Y. Supp. 25. The effect, therefore, of the surrogate's order was to vacate a decree made by this court. And not only that, but the petitioners themselves, in recognition of the power of this court in the premises, at first made the application to this court to open the decree; and, as we have seen, that motion was denied. The surrogate's order, therefore, not only opened this decree, but overruled the decision of this court made upon the same subject. There was no warrant in law for any such proceeding. By the provisions of section 2587 of the Code of Civil Procedure, the appellate court is authorized, upon appeal from the decree of a surrogate, to reverse, affirm, or modify the decree, and may, in a proper case, grant a new trial or hearing. Prior to the adoption of the Code such appeals and decrees thereon were governed by the practice existing in the chancery court. When the appeal was heard by the chancellor, and the decree entered thereon, such decree became a final, binding adjudication. Such court might order a new trial, but it was not at all essential or necessary that it should do so, as it might in a proper case itself make the judgment, and with that judgment or decree the master was powerless to interfere. Schenck v. Dart, 22 N. Y. 421; In re Ross, 87

N. Y. 514; Hewlett v. Elmer, 103 N. Y. 156, 8 N. E. 387; Gelston v. Codwise, 1 Johns. Ch. 189; Lyon v. Merritt, 6 Paige, 473. The Code provisions have assimilated this practice with that on appeals from the decrees of surrogates, and also made the practice uniform with that which obtains on appeals from judgments of the supreme court. Code Civ. Proc. § 1317. The language of that section, so far as applicable to final judgments, is substantially the same as that of section 2587, to which reference has been made heretofore. Consequently the rule which governs the power of the trial court on appeals from judgments is equally applicable to appeals from surrogates, as also were the rules of the court of chancery, from which the system was taken. In Marshall v. Boyer, 52 Hun, 181, 5 N. Y. Supp. 150, it was held that, where the appellate court had exercised its power in modification of a judgment, its determination was absolutely final, and that with such determination the lower court could not interfere. The court, in disposing of the question, said (Barker, P. J., writing):

"Such a judgment is final, so far as this court [special term] is concerned, and without its permission no further action can be taken to change, alter, or modify the judgment as it was affirmed. Otherwise, a cause would never be at rest, and there would be confusion and inconsistency in the judgments of the courts."

Hewitt v. Ballard, 16 App. Div. 466, 44 N. Y. Supp. 935; In re Livingston, 34 N. Y. 555.

The power of the surrogate, under the provisions of section 2481 of the Code, to open decrees, is the same as that possessed by the supreme court over its judgments, so far as the statute authorizes it to exercise the same. In re Henderson, 157 N. Y. 423, 52 N. E. 183. But, as we have already observed, such power and authority is not possessed by the supreme court over final decrees made by an appellate tribunal, and none of the authorities cited by the learned surrogate in support of his order controverts in the slightest degree the rule as above stated. In none of them was such question presented. As the order was not necessary to correct mistakes or omissions, over which the surrogate has power, it follows that it was granted without authority; and, had the appeal which was taken therefrom been promptly brought to the attention of this court, the order would doubtless have been reversed. Under it, however, the parties proceeded to take testimony, and upon such testimony and that theretofore given the surrogate made and entered his decree. From that decree an appeal was taken and brought to a hearing in this court, but the appeal from the order opening such decree did not accompany that appeal. This court upon that appeal considered the additional testimony which had been taken, and reversed the decree of the surrogate, as we have heretofore stated. 48 App. Div. 542, 63 N. Y. Supp. 10. Having determined this question upon the merits, after a consideration of all the testimony, we think that the question of the invalidity of this order should not now be considered, but that such testimony should be permitted to remain in the record, as none of the parties is in any degree prejudiced by such a result. The order, however, should not be considered as having any effect whatever upon the finality of the decree of this court as it existed at the time the

order was made. The testimony taken thereunder is permitted to stand, but no further effect is given to such order.

The motion to resettle the order opening the decree of March 16, 1897, makes the second time that this matter has been brought to the attention of this court. As we have seen, it was first presented in connection with the motion made by the petitioners for a new trial. At that time, and upon the record then before this court, it appeared that Cauldwell had possession and control of all the property and moneys belonging to the estate at the time the decree was entered; and we then held that, as Thomas Rogers might show the subsequent misappropriation of such moneys by Cauldwell, the terms of that decree were not binding upon him, if he established such fact. The testimony which was subsequently taken has borne thereupon, and, under the proof as given, attempt is pertinaciously made to construe such testimony as showing that this decree was a binding adjudication. The entire discussion which has been had in this court shows, beyond the possibility of misapprehension, that the court determined that Thomas Rogers was not chargeable with anything except the $20,000, prior to the 8th day of December, 1895; and this for the reason that he was excluded from participation in or control over this estate prior to that time. As the proof bearing upon the whole subject of his acts prior to that date has been taken, and as the construction put upon it by the court was that he was not liable, and as the decree of this court has been made upon that basis, it is clear that Thomas Rogers ought not by any possibility to be prejudiced by any view that such decree of the surrogate of March 16, 1897, is a bar. No one will now be prejudiced by removing such a possibility, and, in view of the peculiar situation which all the matters in difference between these parties have assumed, we think this notion should prevail, and that the order should be amended nunc pro tunc as of the date of the 11th of July, 1898, so as to permit Thomas Rogers to give proof in exoneration of his liability for the misappropriation of any money by his co-trustee, William Cauldwell.

We come now to the second motion and the last of the present proceedings. Notwithstanding that it appears that the decision of this court upon the last appeal, prior to the present, was clear in its enunciation of what it determined, at least so far as concerns the question of the liability of Thomas Rogers for the devastavit of Cauldwell prior to the 8th of December, 1895, yet we find from the record that the learned surrogate, instead of taking proof upon the subject returned to him for disposition, immediately began an inquiry into the subject of Thomas Rogers' liability for the devastavit of Cauldwell, as though it were an original question and had not been determined by this court; and, so far as is disclosed by the record, not the slightest attention was paid to those matters which the court left, and which it seems to have clearly pointed out, for the determination of the surrogate. It also appears from the moving papers, and those read in opposition, that an action in the supreme court, upon the equity side of the court, was begun to charge Thomas Rogers with the whole devastavit of Cauldwell; the venue being laid in the First department, wherein these petitioners are plaintiffs, and

William Cauldwell and Thomas Rogers and others are defendants.
It appears that that action was referred to a sole referee, to hear, try,
and determine the issues therein, on June 29, 1899, and that subse-
quently, and on the 20th of August, 1900, the referee made his re-
port, wherein he found that Thomas Rogers was liable for the whole
of the devastavit of his co-trustee, Cauldwell, and of substantially all,
if not all, of the moneys which had been lost by the estate by reason
of such devastavit, and directed judgment in favor of the plaintiffs
for the relief which they asked. Upon such report judgment has been
entered in accordance with its terms. It also appears that the sur-
rogate has rendered no decision upon the proceeding which was re-
mitted to him to determine. This motion asks that this court do
now direct and enter a decree in accordance with the terms of its
prior decision. Undoubtedly this court had and has power to enter
a judgment or decree in accordance with its determination, or to take
further proof in reference to the subject-matter and enter a final de-
cree. Code Civ. Proc. § 2586; In re Farmers' Loan & Trust Co., 47
App. Div. 448, 62 N. Y. Supp. 359; In re Beck's Will, 6 App. Div. 211,
39 N. Y. Supp. 810, affirmed on opinion below in 154 N. Y. 750, 49 N.
E. 1093. The unusual character of these proceedings goes very far
towards justifying the application made by Thomas Rogers to this
court. It cannot be doubted that an attempt has been made in this
proceeding to evade the determination and judgment of this court;
nor can the disregard of the referee, in his report and opinion, of the
decisions of this court, which in ordinary course of judicial procedure
are binding and conclusive in their nature, be misunderstood. More-
over, it was certainly the duty of the surrogate, especially after the
last decision made by this court, to follow its direction. This re-
quired a careful compliance with the decrees of this court, which had
then twice determined that Thomas Rogers should only be charged
with the devastavit of the estate subsequent to December 8, 1895.
The first decision of this court remitted to him for determination the
single question whether Thomas Rogers had been charged twice over
for the amount of money put into the Cauldwell property. Upon such
subject not an iota of proof has been taken; nor, so far as appears
by this record, has consideration of that matter been entertained.
Had the surrogate proceeded to take proof upon the $5,000 item ad-
verted to in the court's opinion, or upon the subject of Thomas Rog-
ers' liability for the moneys which were put into the Cauldwell prop-
erty by the substituted trustee and the adult cestuis que trustent, it
would have been clearly excusable, as some doubt might have arisen
whether the court intended to remit those matters to the surrogate
for disposition. The intent of the court, however, was to remit the
single question which we have before specified, and none other. But
the surrogate did not assume to take proof bearing upon these sub-
jects, and, so far as proof was taken at all, it was upon the main sub-
ject of the liability of Thomas Rogers for Cauldwell's devastavit,—a
question utterly beyond his power further to determine or interfere
with. We have not now before us the testimony taken by the referee
in the supreme court action, as it is not returned in the record. His
report, however, as well as his opinion, is set out in full; and from

these documents we are able to perceive that the proof, with some slight exceptions, is the same as appeared in the record upon the former appeal to this court, to which we have adverted. The opinion, for the most part, presents the reasons of the referee why our decisions upon those appeals were wrong, and why they should not be followed. The specific findings of fact, to the number of 50, and the 14 conclusions of law based thereon, reach entirely different conclusions upon the same facts from those which were reached by this court. So far as the referee has made specifications and findings of fact, there is additional testimony in but one important particular. This consists of the trust deed executed by Thomas Rogers to Robert S. Hughes, on August 28, 1876, of Thomas Rogers' interest in the estate of his father, to secure the sum of $35,635.09, and from this testimony seems to have been deduced the idea that it authorized the referee to disregard the decisions of this court; the claim being that the execution of such deed by Thomas Rogers induced his co-trustee, Columbus O. Rogers, to exclude him from participation in the management of the estate. Quite likely this and other matters furnished the basis for the exclusion of Thomas Rogers, but we are not now concerned with the grounds upon which such exclusion was based. Our concern is with the fact that he was excluded. The basis of the exclusion has never been a matter of concern with this court. Our concern has always been the fact of such exclusion, no matter what considerations induced it. If the execution of this deed constituted ground for the original exclusion of Thomas Rogers from participation in the management of this estate, it was a continuing cause, because a similar deed of the same property interests was executed to Cauldwell as trustee, and, if it was a proper basis for the exclusion by Columbus O. Rogers, it was equally so for the exclusion by Cauldwell. The referee also holds, in express terms, that the decree of March 16, 1897, was a conclusive, binding adjudication upon Thomas Rogers, fixing his liability for the devastavit of Cauldwell, and bases his decision thereon, although this court had twice decided otherwise.

In view of the possible misconception of our former decision as to the questions which were remitted, and also in obedience to the suggestion of the court of appeals, we think that we should deny the motion for judgment, and remit to the surrogate for examination and determination questions as to which misapprehension may have arisen. We are also induced to reach this conclusion for the reason that it is possible that we were in error in charging upon the adult cestuis que trustent liability for any part of the corpus of the estate which was put into the Cauldwell property by agreement with the substituted trustee and adult cestuis que trustent. In order, however, that there may be no misapprehension over the matters remitted to the surrogate for disposition, or as to the orders which we now make, the following specifications are made of such matters, and will be embodied in the order to be entered hereon: First. The order opening the decree made by the surrogate on the 20th of March, 1899, is reversed and set aside, except that the testimony taken thereunder is permitted to be considered and to stand in the record. Second. The order entered herein by this court on the 11th of July, 1898, is

amended nunc pro tunc as of that date, so as to provide that the evidence given by Thomas Rogers in exoneration of his liability for the misappropriation of the sum of $20,000, and of any other money or property misappropriated by his co-trustee, William Cauldwell, shall be considered as then taken, and so stand in the record. Third. There is remitted to the surrogate of the county of Westchester, for his determination, the question whether Thomas Rogers should be credited with one-third of the sums which have been paid upon the Cauldwell property, being that property which was transferred by Cauldwell to Thomas Rogers after the discovery of his devastavit. Fourth. There is also remitted to the surrogate, for his determination, the question whether Thomas Rogers should be charged with the sum of $5,000 claimed to have been taken from the trust estate by Cauldwell about January 1, 1897. Fifth. There is also remitted to the surrogate, for his determination, the question as to the amount of money taken from the estate and advanced by the substituted trustee to carry the said Cauldwell property by and with the consent of the substituted trustee and co-operation of the petitioners; also when that amount was advanced,—whether from the principal or income of the estate,—in what proportions from each fund, and who is properly chargeable therewith; the proof, so far as the same has now been taken, to stand and be considered as a part of the record.

Upon the subjects thus submitted the surrogate is authorized to take further proof offered by either party, so far as it bears upon such questions, but is expressly limited in taking proof to such questions; and the decree of this court, made and entered hereon on the 27th of March, 1900, is hereby amended nunc pro tunc as of that date, specifying the particulars in which the questions are remitted to the surrogate for disposition. In the event that such questions are not disposed of in the ordinary course of procedure, Thomas Rogers is permitted to renew his motion for judgment by this court, or to invoke any other remedy, as he shall be advised. It does not seem necessary to discuss any other questions raised before us.

Order of the surrogate of Westchester county opening decree reversed, with $10 costs and disbursements, and matter remitted to the surrogate in accordance with opinion; the decree of this court made and entered March, 1900, being amended nunc pro tunc as of that date in respect to the particulars so remitted. Motion to resettle order of this court of July 11, 1898, granted, with $10 costs and disbursements, and order amended nunc pro tunc as of that date in accordance with opinion. Motion for final decree, based upon the decision of this court embodied in decree entered March 27, 1900, denied, with $10 costs and disbursements. Motion for a direction at foot of order of April 25, 1899, that William Shillaber, Jr., pay all further moneys upon the indebtedness of Thomas Rogers to the principal trust, and not to the petitioners, denied, with $10 costs and disbursements. All concur.